Michael Jacques, Esq.
JACQUES LAW OFFICE, PC
2021 Cleveland Blvd.
Caldwell, ID  83605
(Phone) 208.344.2224
(Fax) 208.287.4300
michael@jacqueslaw.net

Paul A. Rossi, Esq.
*Pro Hac Vice* Admission Pending
IMPG ADVOCATES
316 Hill Street
Suite 1020
Mountville, PA  17554
717.961.8978
Paul-Rossi@comcast.net

*Legal Counsel for Plaintiff*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF IDAHO
## SOUTHERN DIVISION

| | |
|---|---|
| **TEAM KENNEDY,** | **:** |
| | **: CIVIL ACTION #1:24-cv-83-BLW** |
| **Plaintiff,** | **: B. Lynn Winmill, U.S.D.J** |
| | **:** |
| **vs.** | **: Memorandum of Law in Support** |
| | **: of Plaintiff's Motion for an** |
| **PHIL MCGRANE, in his official capacity** | **: Emergency Preliminary** |
| **as the Idaho Secretary of State,** | **: Injunction** |
| | **:** |
| **Defendant.** | **:** |

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S
## MOTION FOR EMERGENCY PRELIMIUNARY INJUNCTION

I.    **Summary of the Argument**

Plaintiff brings this emergency ballot access action pursuant to 42 U.S.C. § 1983, challenging Idaho Code §§34-708A, 34-704 which in tandem, impose the unconstitutional requirement for Plaintiff, on behalf of Robert F. Kennedy Jr.'s 2024 independent campaign for the office of President of the United States to file ballot access petitions containing the name of Mr. Kennedy's vice-presidential candidate and 1,000 valid signatures no later than Friday, March 15, 2024, in order to secure access to Idaho's 2024 general election ballot.  Plaintiff also challenged in the complaint the requirement, imposed on the first petition published by Defendant, for petition circulators to declare, under penalty of perjury, that they are a resident of the state of Idaho under the "Certification" they are required to execute before filing Plaintiff's petition.  Since Plaintiff filed the complaint in this action, Defendant has published a new petition which removes the residency requirement for petition circulators in conformance with statutory law and precedent establishing that bans on out-of-state petition circulators are unconstitutional.  Accordingly, Plaintiff does not seek preliminary relief on the residency requirement issue.

The Supreme Court's binding precedent of *Anderson v. Celebrezze*, 460 U.S. 780 (1983) the seminal ballot access case, establishes that Idaho's bizarre March 15th deadline challenged in this action is unconstitutional.  There is no argument

that can be advanced to save the March 15th deadline from constitutional scrutiny. *Anderson* is dispositive.  Plaintiff will prevail on the merits of its claim that the March 15th deadline imposed by Idaho on independent presidential candidates is unconstitutional.

Likewise, the requirement for independent presidential candidates to name their vice-presidential candidate so early in the ballot access process has long been held to be unconstitutional as a violation of the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution, especially where there is no statutory provision to permit the substitution of a vice-presidential candidate in favor of the name of the final selection.  *Anderson v. Firestone*, 499 F.Supp. 1027 (1980).  In this case, the fact that no petition signature can be collected until a vice-presidential candidate is named adds a First Amendment violation into the catalogue of Idaho's constitutional torts in this case.  Defendant, and the state of Idaho, has no legitimate interest in requiring independent presidential candidates to name their vice-presidential candidates before they secure ballot access. Presidential candidates for the major political parties do not need to name their vice-presidential candidates until September 1, 2024, such that no ballots are constructed or printed until after that date.  Accordingly, there is simply no basis for a state to truncate the selection process permitted for independent candidates to determine their vice-presidential candidates to a period less than that afforded to

the major party presidential candidates.  Further, on the flip side, the fact that no

petition signatures can be collected until an independent presidential candidate

capitulates to the rushed decision to name a vice-presidential candidate acts to

shorten the precious period of time that independent candidates can collect petition

signatures, which is core political speech afforded the highest protection under the

First and Fourteenth Amendments, imposing a severe burden on protected speech

and threatens to deny the candidate ballot access.  Accordingly, plaintiffs are very

likely to succeed on the merits of its claim that the requirement to name a vice-

presidential candidate 5 1/2 months before presidential candidates for the major

political parties is both a violation of the Equal Protection Clause and the First

Amendment to the Constitution.

## II.    <u>Statement of Facts</u>

Plaintiff is the campaign organization for Robert F. Kennedy Jr. who

announced his independent candidacy for the Office of President of the United

States on Monday, October 9, 2023.  Plaintiff intends to compete for the electoral

votes in all fifty states and the District of Columbia.  Idaho is allocated four (4)

electoral college votes in the 2024 general presidential election. Compl. at ¶22.

 As such, Plaintiff intends to secure access to Idaho's 2024 general election ballot

on terms consistent with rights guaranteed under the First and Fourteenth

Amendments to the United States Constitution.

Idaho Code §§34-708A, 34-704 imposes the unconstitutional requirement for Plaintiff to file ballot access petitions containing the name of Mr. Kennedy's vice-presidential candidate and 1,000 valid signatures no later than Friday, March 15, 2024, in order to secure access to Idaho's 2024 general election ballot.

Specifically, Idaho Code Section 24-708A provides:

> (1) Persons who desire to be independent candidates for the offices of president and vice president, must file declarations of candidacy as independent candidates during the period set forth in section 34-704, Idaho Code. Such declarations must state that such persons are offering themselves as independent candidates and must declare that they have no political party affiliation. The declarations shall have attached thereto a petition signed by one thousand (1,000) qualified electors.

> (2) The candidates for president and vice president shall be considered as candidates for one (1) office, and only one (1) such petition need be filed for both offices.

> (3) Signatures on the petitions required in this section shall be verified in the manner prescribed in section 34-1807, Idaho Code, on a form similar to that used for recall petitions under chapter 17, title 34, Idaho Code, as prescribed by the secretary of state; except that the petition circulators are not required to be Idaho residents.

Compl. at ¶24. Section 34-704 of the Idaho Code, in turn, provides, in relevant part:

> (1) Any person legally qualified to hold such office is entitled to become a candidate and file his declaration of candidacy. Each political party candidate for precinct, state, district or county office shall file his declaration of candidacy in the proper office between 8:00 a.m. on the

> twelfth Monday preceding the primary election and 5:00
> p.m. on the tenth Friday preceding the primary election.
>
> …
>
> (3)  Independent candidates shall file their declaration of
> candidacy in the manner provided in section 34-708,
> Idaho Code.

Compl. at ¶25.  The Primary Election is set for May 21, 2024.  §§ 34-102, 34-601,

34-211, 34-1101, Idaho Code.  Compl. at ¶26.  Accordingly, Plaintiff must file the

declaration of candidacy for Robert F. Kennedy Jr., and a vice-presidential

candidate and petitions containing 1,000 valid petition signatures no later than

Friday, March 15, 2024.  Compl. at ¶27.  Conversely, the state chairman of each

political party shall certify the names of the presidential and vice-presidential

candidates and presidential electors to Defendant on or before September 1, 2024.

§34-711, Idaho Code.  Compl at ¶28.

The 2024 Petition promulgated by Defendant, required to be used by

Plaintiff, to collect signatures to secure ballot access for the 2024 general election

for president, requires that the names of both Robert F. Kennedy Jr., and a vice-

presidential nominee be printed on the 2024 Petition before circulation.  Compl at

¶29.  Substitution for political party vice-presidential vacancies may be filled by

political party chairmen.  Compl. at ¶30.  However, Idaho provides no statutory

avenue for substitution of independent vice-presidential nominees.  *See*, *Anderson*

*v. Firestone*, 499 F.Supp. 1027 (N.D. Fla. 1980); Compl, at ¶31.

Accordingly, Plaintiff must name the vice-presidential nominee, and not a placeholder candidate, on the 2024 Petition and file a declaration of candidacy for Robert F. Kennedy Jr's, actual vice-presidential nominee no later than March 15, 2024, when political party vice-presidential nominees need only be named no later than September 1, 2024.  Compl. at ¶32.  The inability to collect petition signatures until a vice-presidential nominee is named by an independent presidential candidate severely shortens both the deliberative and political process afforded to political party presidential candidates to select their vice-presidential nominee with the care properly afforded to that office, all to the great detriment of independent presidential candidates.  Compl. at ¶33.  The inability to collect petition signatures until an independent presidential candidate names his or her vice-presidential candidate shortens the number of days permitted by statute an independent candidate to collect the required number of valid petition signatures necessary to secure ballot access.  Compl. at ¶34.  The collection of signatures to demonstrate the constitutionally permitted modicum of support before a state is required to place the name of an independent or minor political party presidential candidate on the general election ballot has nothing to do with the person named by the independent or minor political party as their nominees for the Office of Vice President.  Compl. at ¶36.

No federal court has ever upheld a petition and filing deadline for
independent presidential candidates as early as Idaho's new March 15th deadline.
Further, because of the knock-on unconstitutional provision to name his vice-
presidential candidate before Plaintiff can begin to collect any signatures, Plaintiff
cannot and has not been permitted to collect any of the 1,000 valid petition
signatures to secure ballot access in Idaho.

### III.   <u>Argument</u>

#### A.   <u>Standard of Review for Temporary Restraining Order and Preliminary Injunctive Relief</u>

Based upon the facts detailed above, and relevant precedent, Plaintiff is
clearly entitled to immediate preliminary injunctive relief.  This court may grant
the requested preliminary injunction if Plaintiff demonstrates the following: (1)
Plaintiff is likely to succeed on the merits of the claims; (2) Plaintiff is likely to
suffer irreparable harm in the absence of preliminary relief; (3) the balance of the
equities tip in the plaintiff's favor; and (4) the requested injunctive relief is in the
public interest." *Leigh v. Salazar*, 677 F.3d 892, 896 (9th Cir. 2012) (citing *Winter
v. NRDC, Inc.*, 555 U.S. 7, 20 (2008));  *see also*, *Short v. Brown*, 893 F.3d 671,
675 (9th Cir. 2018). "The Ninth Circuit weighs these factors on a sliding scale," *Id*.
So when there are "'serious questions going to the merits' – that is, less than a
'likelihood of success' on the merits – a preliminary injunction may still issue so
long as 'the balance of hardships tips sharply in the plaintiff's favor' and the other

two factors are satisfied." *Id*. Under the sliding scale approach, the Ninth Circuit

allows district courts to weigh any competing considerations to provide the

appropriate relief. *Short*, 893 F.3d at 675 (9th Cir. 2018).

When the moving party alleges constitutional violations, including violation

of rights secured by the First Amendment, they must make a "colorable claim" that

their rights have been infringed or threatened with infringement, but upon this

showing "the burden shifts to the government to justify the restriction."

*Thalheimer v. City of San Diego*, 645 F.3d 1109, 1116 (9th Cir. 2011) (citing *Klein*

*v. City of San Clemente*, 584 F.3d 1196, 1201 (9th Cir. 2009)).

### B.   Plaintiff Satisfies All the Requirements for the Issuance of a Preliminary Injunction

#### 1.   Plaintiff is Likely to Prevail on the Merits of the Case

##### a.   Defendant's March 15th Deadline for Independent Presidential Candidates to File their Nomination Petitions is Unconstitutional

The Supreme Court has long recognized that state ballot access rules: "place

burdens on two different, although overlapping, kinds of rights – the right of

individuals to associate for the advancement of political beliefs, and the right of

qualified voters, regardless of their political persuasion, to cast their votes

effectively. Both of these rights, of course, rank among our most precious

freedoms." *Williams v. Rhodes*, 393 U.S. 23, 30-31 (1968). The burden arises

because "voters can assert their preferences only through candidates or parties or

both.  'It is to be expected that a voter hopes to find on the ballot a candidate who comes near to reflecting his policy preferences on contemporary issues'" *Anderson v. Celebrezze*, 460 U.S. 780 at 787 (1983) (quoting *Lubin v. Panish*, 415 U.S. 709, 716 (1974)).  When a state, by means of its ballot access requirements, restricts the field of candidates from which a voter may choose, there is "always…at least some theoretical, correlative effect on voters." *Anderson*, 460 U.S. at 786 (quoting *Bullock v. Carter*, 405 U.S. 134, 143 (1972)).

Of course, some regulation of access to the general election ballot is necessary to ensure that elections will be "fair and honest and if some sort of order, rather than chaos, is to accompany the democratic processes." *Storer v. Brown*, 415 U.S. 724, 730 (1974).  However, "even when pursuing a legitimate interest, a State may not choose means that unnecessarily restrict constitutionally protected liberty," and must "adopt the least drastic means to achieve [its] ends." *Illinois Elections Board v. Socialist Workers Party*, 440 U.S. 173, 185 (1979) (citation and quotation omitted); *Anderson*, 460 U.S. at 806.

As the Supreme Court reaffirmed in *Burdick v. Takushi*, 504 U.S. 428 (1992), ballot-access laws in general, and petition deadline rules in particular, must be evaluated according to the standard first articulated in *Anderson v. Celebrezze*. The court must weigh "the character and magnitude of the asserted injury to the rights protected by the First and Fourteenth Amendments that the plaintiff seeks to

vindicate" against "the precise interests put forward by the state as justifications for the burden imposed by its rules," taking into consideration "the extent to which those interests make it necessary to burden plaintiff's rights." *Burdick*, 504 U.S. at 434 (quoting *Anderson*, 460 U.S. at 789).  The Court also noted that "because the interests of minor parties and independent candidates are not well represented in state legislatures, the risk that the First Amendment rights of those groups will be ignored in legislative decision making may warrant more careful judicial scrutiny." *Anderson*, 460 U.S. at 793 n. 16.

In *Anderson*, the Supreme Court invalidated an Ohio petition deadline which required candidates who were not seeking access to the ballot through the Democratic or Republican Party primaries to file nomination petitions for the November general election no later than March 20, 1980, 75 days prior to the primary election and 229 days before the general election. *Anderson*, 460 U.S. at 783 n. 1.  The Court in *Anderson* identified two distinct harms imposed by the early petition deadline.

First, the *Anderson* Court recognized that the early deadline affected an identifiable segment of voters – those dissatisfied with the major party candidates.

> In election campaigns…the candidates and the issues simply do not remain static over time.  Various candidates rise and fall in popularity; domestic and international developments bring new issues to center stage and may effect voters' assessments…Such developments will certainly affect the strategies of candidates who have already entered the race; they may also create opportunities for

11

> new candidates….Yet Ohio's filing deadline prevents persons who wish to be independent candidates from…creating new political coalitions of Ohio voters…at any time after mid-to-late March….If the State's filing deadline were later in the year, a newly-emergent independent candidate could serve as the focal point for a grouping of Ohio voters who decide, after mid-March, that they are dissatisfied with the choices within the two major parties.

*Id*. at 790-92.  Second, and most important in this case, the Court recognized that

an early petition deadline:

> Burdens the signature-gathering efforts of independents who decide to run in time to meet the deadline.  When the primary campaigns are far in the future and the election itself is even more remote, the obstacles facing an independent candidate's organizing efforts are compounded. Volunteers are more difficult to recruit and train, media publicity and campaign contributions are more difficult to secure, and voters are less interested in the campaign.

*Id*. at 792.

The Court then rejected the three rationales offered by the State in support of

the early mid-March deadline: voter education, equal treatment and political

stability.  Although the Court accepted voter education as a legitimate goal, it held

that modern communications and widespread literacy made it "unrealistic to

suggest that it takes more than seven months to inform the electorate about the

qualifications of a particular candidate simply because he lacks a partisan label."

*Id*. at 797.  The mid-March deadline also failed to serve the State's goal of voter

education because the relevant decision-making does not occur in late March, but

in November, and because the electoral process contains its own cure for inadequate voter education – failure at the polls. *Id*. at 798 n. 25.

Without commenting on the legitimacy of equal treatment as a state interest, the Court held that Ohio's early mid-March filing deadline bore no relation to the asserted goal.  Assuming that independent and partisan candidates were, in fact, treated alike, the Court analyzed the rational for doing so.  For candidates participating in a primary election, the early deadline was simply justified by administrative concerns.  But no comparable justification supported the same deadline for a candidate who did not participate in a primary and whose petitions would not be examined until months later. *Id*. at 800.  Moreover, only a candidate participating in a primary would receive the correlative benefit of "automatic support of an experienced organization." *Id*. "In short, 'equal treatment' of partisan and independent candidates simply is not achieved by imposing the March deadline on both.  As we have written, "[s]ometimes the grossest discrimination can lie in treating things that are different as though they are exactly alike." *Id*. at 801 (quoting *Jenness v. Fortson*, 403 U.S. 431, 442 (1971)).

Finally, the Court rejected Ohio's assertion that the early mid-March deadline served to protect the two major parties from intra-party feuding, reasoning that *Williams v. Rhodes* had already foreclosed any attempt to protect the two major parties, as opposed to a two-party system in general, particularly at the

13

expense of independent candidates.  *Id*. at 802.  Further, unlike the statute upheld

in *Storer*, 415 U.S. 724, the Ohio statute could not be plausibly explained as a

legitimate attempt to prevent intra-party feuding in general.  It could not be

justified as a "sore loser" statute, since it blocked access to the general election "75

days before the primary, at a time when, by definition, no candidate has yet lost a

party primary." *Anderson*, 460 U.S. at 804 n. 31.  More generally, the early

deadline applied even to those candidates who had not participated, nor intended to

participate, as Mr. Kennedy in this action.  *Id*. at 805.  Finally, the Court noted that

early petition deadlines could serve to impair party harmony by forcing dissident

groups to form independent or third-party candidacies without first attempting to

influence the outcome of major party primaries, in order that the dissident group

might have some chance to place a candidate on the ballot.  *Id*.

   *Anderson's* reasoning is equally applicable to the case at bar.  Indeed, in the

wake of *Anderson*, the lower federal courts have routinely struck unreasonably

early petition deadline statutes, comparable to Ohio's, when applied to independent

or alternative party candidates.  *See, e.g., New Alliance Party of Alabama v. Hand*,

933 F.2d 1568 (11th Cir. 1991) (*per curiam*) (April 6th petition deadline – 60 days

before primary – invalidated); *Cromer v. State of South Carolina*, 917 F.2d 819 (4th

Cir. 1990) (March 1 notice of candidacy requirement – 70 days before primary –

invalidated); *Libertarian Party of Kentucky v. Ehrler*, 776 F.Supp. 1200 (E.D. Ky.

1991) (January 29 petition deadline – 119 days before primary – invalidated);

*Libertarian Party of Nevada v. Swackhamer*, 638 F.Supp. 565 (D. Nev. 1986)

(April 15 petition deadline – 140 days before primary – invalidated); *Cripps v.*

*Seneca County Bd. of Elec.*, 629 F.Supp. 1335 (1985) (February 21 petition

deadline – 75 days before primary – invalidated); *Stoddard v. Quinn*, 593 F.Supp.

300 (D. Me. 1984) (April 1 petition deadline invalidated); *LaRouche v. Burgio*,

594 F.Supp. 614 (D.N.J. 1984) (establishing deadline 40 days prior to primary

election unconstitutional as applied to Presidential candidates); *see also*, *LaRouche*

*v. Monson*, 599 F.Supp. 621, 627-28 (D. Utah 1984) (state conceded April 15

petition deadline was unconstitutional as applied to Presidential candidates and

accepted petitions until September 12).

   None of the traditional asserted state interests can serve to justify Idaho's

new March 15, 2024, deadline for independent presidential candidates to their

nomination petitions along with the name of their vice-presidential candidate.  No

one can seriously contend that a deadline to collect and file petition signatures

nearly 9 months before the general election is required to advance any state

interest, let alone the required legitimate state interest.  *New Alliance Party*, 933

F.2d at 1576.

   Any argument advanced that Idaho voters need 9 months to educate

themselves on an independent presidential candidate for the 2024 general election

is flatly laughable and foreclosed by *Anderson*.  Nor does Idaho's March 15, 2024,

deadline serve an interest in equal treatment.  As in *Anderson*, application of

primary election deadlines to independent candidates does not result in equal

treatment.  "[The recognized political] parties have until the second Tuesday in

June to select their nominees; an independent's judgment must be based on a

history that ends April."  *Stoddard*, 593 F.Supp. at 306 (citing *Anderson*, 460 U.S.

at 80-801). As applied to Idaho:

> The "equal treatment" accorded by [New Jersey's] imposing of the
> same pre-filing deadline on primary and independent candidates is
> only superficial "equality."  There are obvious administrative reasons
> for requiring primary candidates to file at that time that simply do not
> apply to independent candidates.  They are therefore unequals in this
> respect, and equal treatment of unequals is not equality.  Similarly,
> primary candidates derive a benefit from their organized party support
> that offsets the burden imposed by the filing deadline in a way not
> shared by the independent candidate.  Here again, the two types of
> candidacies are unequal in a way which makes imposition upon them
> of equal burdens no equality of treatment.

*Cromer*, 917 F.2d at 824-25 (citing *Anderson*, 460 U.S. at 799-801).  Although

administrative reasons – such as the necessity to verify signatures and construct,

proof, print/distribute/program primary ballots and/or machines – certainly justify

an early 2024 deadline for primary candidates to announce their intentions, no such

similar justification exists for the independent candidate deadline on the same date.

The general election ballots are not printed until well after the major party

conventions in July and August.  As Idaho must assert "a substantial interest to be

achieved by restrictions on…speech" that directly advance that substantial interest, Idaho cannot survive any merits test considering the controlling precedent of *Anderson*. Further, it is clear Idaho can easily accept independent presidential petitions in August, well in advance of the need to construct their ballot and consistent with the deadlines for major party candidates to name their presidential and vice-presidential candidates. *See e.g., Cent. Hudson Gas & Elec. Corp. v. Public Serv. Comm'n*, 447 U.S. 557, 564 (1980).

Accordingly, Plaintiff is more than likely to succeed on the merits of its claim that Idaho's March 15, 2024, deadline for independent presidential candidates to file nomination petitions is unconstitutional.

> **b.** **Defendant's Requirement that Independent Presidential Candidates Name their Vice-Presidential Candidates 5 ½ Months Before Political Party Presidential Candidates is <u>Unconstitutional</u>**

As noted above, and as important with respect to any analysis as to the unconstitutionality of the early requirement for independent and third-party (and only independent and third-party) presidential candidates to name their vice-presidential candidates 5 ½ months before the deadline for political parties to name their vice-presidential candidates, implicate the right of voters to cast an effective vote. Again, the United States Supreme Court has long recognized that state ballot access rules: "place burdens on two different, although overlapping, kinds of rights – the right of individuals to associate for the advancement of political beliefs, and

the right of qualified voters, regardless of their political persuasion, to cast their votes effectively.  Both of these rights, of course, rank among our most precious freedoms." *Williams v. Rhodes*, 393 U.S. 23, 30-31 (1968).  The burden arises because "voters can assert their preferences only through candidates or parties or both.  'It is to be expected that a voter hopes to find on the ballot a candidate who comes near to reflecting his policy preferences on contemporary issues'" *Anderson v. Celebrezze*, 460 U.S. 780 at 787 (1983) (quoting *Lubin v. Panish*, 415 U.S. 709, 716 (1974)).  When a state, by means of its ballot access requirements, restricts the field of candidates from which a voter may choose, there is "always…at least some theoretical, correlative effect on voters."  *Anderson*, 460 U.S. at 786 (quoting *Bullock v. Carter*, 405 U.S. 134, 143 (1972)).

Again, as stated above. the Supreme Court in *Burdick v. Takushi*, 504 U.S. 428 (1992), ballot-access laws in general, and petition deadline rules in particular, must be evaluated according to the standard first articulated in *Anderson v. Celebrezze*.  The court must weigh "the character and magnitude of the asserted injury to the rights protected by the First and Fourteenth Amendments that the plaintiff seeks to vindicate" against "the precise interests put forward by the state as justifications for the burden imposed by its rules," taking into consideration "the extent to which those interests make it necessary to burden plaintiff's rights." *Burdick*, 504 U.S. at 434 (quoting *Anderson*, 460 U.S. at 789).  The requirement to

name a vice-presidential candidate is a form of up-front petition deadline, as threatening to the ability to secure ballot access as an early filing deadline for nomination petitions.  And, with respect to the requirement for independent and third-party candidates to name their vice-presidential candidates before they can collect any petition signatures and when the major party presidential candidates are not required to either name their vice-presidential candidates until their nominating conventions – enjoying a luxury of time and space to make a considered selection, not afforded to independent and third-party candidates – Defendant must explain to this Court "the precise interests put forward by the state as justifications for the burden imposed by its rules," taking into consideration "the extent to which those interests make it necessary to burden plaintiff's rights." *Burdick*, 504 U.S. at 434 (quoting *Anderson*, 460 U.S. at 789).  Clearly, there is no actual state interest in forcing independent and third-party presidential candidates to name their vice-presidential candidates before they may collect petition signatures to demonstrate that the presidential candidate has a modicum of support within the state sufficient to warrant ballot access for the presidential candidate.  The United States Supreme Court has never articulated or indicated that a state may condition ballot access based on a full ticket showing of support.  Only the presidential candidate needs to demonstrate support, through the collection of petition signatures, to secure ballot access.  Idaho, has, out of whole-cloth, and without any foundational state interest,

manufactured the requirement to include the name of the vice-presidential candidate on the petition for candidacy.

Further, state laws may be successfully challenged on equal protection grounds if they are found to "invidiously discriminate" against independent and minor parties. *American Party of Texas v. White*, 415 U.S. 767, 781 (1974). To assert an equal protection violation Plaintiff need only demonstrate a discrimination against it "of some substance." *Id*.

In *Anderson v. Firestone*, Judge Stafford of the United States District Court for the Northern District of Florida, 499 F.Supp. 1027 (N.D. Fla. 1980), applied the proper, and straight forward analysis that the denial of equal protection is shown upon a state's "failure to provide the same or similar mechanisms….as provided to party candidates." *Anderson v. Firestone*, 49 F.Supp. at 1029. In that case, John Anderson secured ballot access but was not permitted to replace the name of the vice-presidential candidate named on his ballot access petitions, on the same basis as the right of political party presidential candidate to replace their own vice-presidential candidates. The court found this to be a clear violation of equal protection. In this action, the problem lies with the requirement to name a vice-presidential candidate before petition signatures may be collected – an equally severe burden as not being able to switch-out a vice-presidential candidate.

In addition, precedent makes it clear, that the States have no inherent power to regulate federal elections.  Rather, the Constitution delegates that power and "the States may regulate the incidents of [federal elections], including balloting, only within the exclusive delegation." *Cook v. Gralike*, 531 U.S. 510, 522-23 (2001).  And though the Constitution grants States authority "to prescribe the procedural mechanisms" for federal elections, *id*. at 523, that authority is limited to "election *procedures*." *U.S. Term Limits v. Thornton*, 514 U.S. 779 (1995).  The power so delegated does not include the ability "to dictate electoral outcome, <u>to favor or disfavor a class of candidates</u>, or to evade important constitutional restraints." *Cook*, 531 U.S. at 523.  Here, Idaho's early requirement for independent and third party candidates to name their vice-presidential candidate before the presidential candidate may begin the process to collect the signatures necessary to demonstrate that he or she has a sufficient modicum of support to warrant ballot access clearly disfavors independent and third-party presidential candidates over presidential candidates nominated by the political parties because, without any supporting state interest, it imposes an initial barrier to secure ballot access not imposed on political party candidates.  Political party presidential candidates may seek their party's nomination without either having to make a rushed decision on their vice-presidential nominee or having their ultimate vice-presidential candidate made part of the nomination process.  Even if the voters of

Idaho ultimately disapprove of Mr. Kennedy's vice-presidential candidate, that determination cannot be made part of Mr. Kennedy's ballot access process or the signature collection process, as it is not imposed on political party presidential candidates in their quest to be named to the 2024 general election ballot as their party's nominee.  If the voters do not like a vice-presidential candidate, the time for the electorate to pass judgment on that candidate is at the general election – the same for political party presidential tickets.

The bare fact that Idaho has denominated that the Petition for Candidacy that Plaintiff must use to secure the required number of valid signatures as the "United States President and Vice President Independent Candidate – Petition for Candidacy" does not alter the unconstitutional nature of the requirement under the Equal Protection Clause.  The state of Idaho does not have the right to impose a petition requirement on a vice president.  Only the independent presidential candidate must demonstrate a modicum of support to secure ballot access.  The naming of Plaintiff's vice-presidential candidate is the sole province of Mr. Kennedy.  The electorate plays no role in the naming or approval of an independent or third-party presidential candidate's vice-presidential selection as part of the ballot access process.  The only role of the electorate is their vote at the general election.  Any other scheme imposed by a state violates the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution

– because vice-presidential candidates for political parties are not subject to electoral inspection until the general election.

In this case, the requirement to name a vice-presidential candidate in time to collect 1,000 valid petition signatures (all for an early March 15th deadline, which, Plaintiff assumes will be moved back to August as it is clearly unconstitutional) and in any case, well before the political party candidates name their vice-presidential candidates, either imposes a limit on the ability to collect petition signatures and/or requires independent and third-party presidential candidates to rush their very important decision as to who their vice-presidential candidate will be. At bottom, there is no legitimate state interest or regulatory purpose to impose a different deadline for the naming of vice-presidential candidates differently between independent and third-party versus political party presidential campaigns.

The naming of a vice-presidential candidate is one of the most important decisions any presidential candidate must make – perhaps even more important for the electoral prospects for an independent candidate who must use this pick to draw a broader electoral appeal to the campaign. Mr. Kennedy is engaged in a meticulous process to select a vice-presidential candidate who matches his political agenda while, at the same time, expanding the campaign's appeal to additional electoral audiences. This is a process that cannot be rushed. Further, Idaho, cannot force independent and third-party candidates to name their vice-presidential

candidates sooner than political parties so that the Republican and Democratic establishments have more time than they do to conduct the inevitable opposition research and devise counter-campaign strategies and advertising against independent and third-party vice-presidential candidates, time not equally afforded to the campaigns of independent and third-party candidates.  Further, Idaho, as was the case in *Anderson v. Firestone*, does not provide a statutory provision for independent candidates to replace their vice-presidential candidates.  But, even if a vice-presidential candidate can be replaced in Idaho, the requirement to formally lie to the voters as the independent candidate's first public act is a mechanism which is not equal to any process imposed on political party candidates for the naming of their vice-presidential candidates on September 1st.  This is, therefore, inequality if not just "some substance" but of great and crimpling substance sufficient to establish a clear violation of the Equal Protection Clause of the Fourteenth Amendment.

## 2.  <u>Plaintiff Will Suffer Irreparable Harm</u>.

After concluding that Plaintiff has a likelihood of success on the merits of its First and Fourteenth Amendment claims, Plaintiff is "entitled to a presumption of irreparable injury."  The "loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury."  *Elrod v. Burns*, 427 U.S. 347, 373 (1976).  "It is well established that the deprivation of

constitutional rights 'unquestionably constitutes irreparable injury.'" *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) (quoting *Elrod v. Burns*, 427 U.S. 347, 373-74 (1976)).   Further, in this action, in the absence of the requested preliminary injunction, Mr. Kennedy will be denied access to Idaho's general election presidential ballot.  "If the plaintiffs lack an adequate opportunity to gain placement on the ballot in this year's election, this infringement on their rights cannot be alleviated after the election." *Council of Alternative Political Parties v. Hooks*, 121 F.3d 876, 883 (3d Cir. 1997).  This is why a district court must enter an injunction once a plaintiff establishes a likelihood of success that a ballot-access restriction violates the Constitution.  *See*, *Matsumoto v. Pua*, 775 F.2d 1393, 1396 (9th Cir. 1985) ("[I]f the plaintiffs established that they will probably succeed on the merits, then it would have been an abuse of discretion for the district court to have denied the preliminary injunction."). Accordingly, Plaintiff satisfies the second prong of the test to receive preliminary injunctive relief.

### 3.  <u>Defendant Will Suffer No Injury By the Requested Injunctions</u>.

As no legitimate state interest is advanced by the March 15, 2024, filing deadline imposed, or the requirement that Plaintiff name Mr. Kennedy's vice-presidential candidate 5 ½ months before the political parties are required to name their vice-presidential candidates, the requested injunctive relief will pose no injury to Defendant.  The Ninth Circuit has made it "clear that it would not be equitable

or in the public's interest to allow the state…to violate the requirements of federal law, especially when there are no adequate remedies available." *Valle del Sol, Inc. v. Whiting*, 732 F.3d 1006, 1029 (9th Cir. 2013). Plaintiff's requests that this Court set the deadline for independent presidential candidates to file their validated petition signatures contained on the Petition for Candidacy and then required Declarations of Candidacy no later than Thursday, August 1, 2024 – a deadline consistent with many other state-imposed deadlines on independent presidential candidates for the 2024 general election, will cause no injury to Defendants. Accordingly, Plaintiff clearly satisfies the third prong of the test for the grant of expedited preliminary injunctive relief.

### 4. Requested Temporary and Preliminary Injunctive Relief is in the Public Interest.

Under the final prong of the test for expedited preliminary injunctive relief, Plaintiff must show that issuing the requested injunctive relief is in the public interest. Vindicating First and Fourteenth Amendment freedoms is clearly in the public interest. *See*, *Utah Licensed Bev.*, 256 F.3d at 1076 ("Because we have held that Utah's challenged statutes also unconstitutionally limit free speech, we conclude that enjoining their enforcement is an appropriate remedy not adverse to the public interest.") *Valle del Sol, Inc. v. Whiting*, 732 F.3d 1006, 1029 (9th Cir. 2013) (providing a remedy for the violation of constitutional rights is in the public's interest); *Am. Beverage Ass'n v. City & Cty. of San Francisco*, 916 F.3d

749, 758 (9th Cir. 2019); *Hooks*, 121 F.3d at 883-84. *See also*, *NAACP v. Alabama ex rel. Patterson*, 357 U.S. 449 (1958); *Westberry v. Sanders*, 376 U.S. 1, 17 (1964) ("No right is more precious in a free country than that of having a voice in the election of those who make the laws under which….we live. Other rights, even the most basic, are illusory if the right to vote is undermined.") Accordingly, the requested expedited preliminary injunctive relief is in the public interest and therefore, Plaintiff satisfies all four prongs and is entitled to the requested preliminary injunctive relief.

### IV. <u>Conclusion</u>

For all the foregoing reasons, Plaintiff's pending motion for a preliminary injunction should be granted, enjoining Defendants from enforcing the March 15, 2024, deadline for independent candidates to file their nomination signatures contained on the Petition for Candidacy and the required Declarations of Candidacy, as well as, the requirement for independent presidential candidates to name their vice-presidential candidate 5 ½ months before political parties must name their vice-presidential candidate and before Plaintiff may collect signatures on the nomination petitions required to secure access to Idaho's 2024 general election presidential ballot. This Court should also preliminarily issue an Order

setting the new deadline to for independent and third-party presidential candidates to file their Petition for Candidacy and Declarations of Candidacy to August 1 and the deadline to name their vice-presidential candidates to September 1st, 2024, the same deadline imposed on the political parties.

Respectfully submitted,


Dated: February 23, 2024          __/s/ **Paul A. Rossi**_____
                                  Paul A. Rossi, Esq.
                                  *Pro Hac Vice* Admission
                                  IMPG ADVOCATES
                                  316 Hill Street
                                  Suite 1020
                                  Mountville, PA  17554
                                  717.961.8978
                                  Paul-Rossi@comcast.net

                                  *Counsel for Plaintiff*

## <u>CERTIFICATE OF SERVICE</u>

Plaintiff, by and through its undersigned legal counsel, hereby certify that the foregoing memorandum of law and the attached motion for preliminary injunctive relief and proposed order, have been filed with this Court's Clerk through the ECF electronic filing system and, therefore, a true and correct copy of the same has been automatically served on opposing counsel.

Dated: February 23, 2024        __ **/s/ Paul A. Rossi**_____

                                  Paul A. Rossi, Esq.
                                  *Pro Hac Vice* Admission
                                  IMPG ADVOCATES
                                  316 Hill Street
                                  Suite 1020
                                  Mountville, PA  17554
                                  717.961.8978
                                  Paul-Rossi@comcast.net

                                  *Counsel for Plaintiff*

## **CERTIFICATION**

Plaintiff, by and through its undersigned legal counsel, certify that the body of the foregoing memorandum of law contains 6,194 words, based on the word-count function of Micro Soft Word.

Dated: February 23, 2024          **__/s/ Paul A. Rossi_____**
                                  Paul A. Rossi, Esq.
                                  *Pro Hac Vice* Admission
                                  IMPG ADVOCATES
                                  316 Hill Street
                                  Suite 1020
                                  Mountville, PA  17554
                                  717.961.8978
                                  Paul-Rossi@comcast.net

                                  *Counsel for Plaintiff*