UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| TEAM KENNEDY,<br><br>　　　Plaintiff,<br><br>　　v.<br><br>PHIL MCGRANE, in his official capacity as the Idaho Secretary of State,<br><br>　　　Defendant. | Case No. 1:24-cv-00083-BLW<br><br>**MEMORANDUM DECISION AND ORDER** |

## INTRODUCTION

Before the Court is Defendant Phil McGrane's Motion to Dismiss (Dkt. 17). For the reasons explained below, the Court will deny the motion.

## BACKGROUND

In November 2023, Team Kennedy asked the Idaho Secretary of State's office several questions related to how Robert F. Kennedy, Jr. could qualify for the Idaho presidential ballot as an independent candidate. Among other things, Team Kennedy asked: (1) "What date and time must signatures be submitted to the state?" and (2) "Does the vice presidential candidate have to be listed on the petition forms?" *See Ex. A to Cassidy Dec.*, Dkt. 17-6, at p. 3 of 6. A State election specialist responded to the inquiry, attaching a form petition for candidacy and

letting Team Kennedy know that petition forms had to be received by 5:00 p.m. on March 15, 2024 and, further, that "[t]he name of the vice presidential candidate is included on the petition form." *See id.* at p. 2 of 6.

Roughly a month later, on December 20, 2023, the Secretary of State's office responded to additional questions from Team Kennedy. Included in that series of questions was this one: "A VP question: Does Idaho permit a vice presidential substitution?" *Ex. C to McQuade Dec.*, Dkt. 17-9, at 3. The Secretary of State's office answered as follows: "A substitution may be made up until the deadline of September 3, 2024." *Id.* A few weeks after receiving this information, Team Kennedy filed this action. *See Feb. 12, 2024 Compl.*, Dkt. 1.

The complaint alleges four claims, but the parties agree that Claims 1 and 2 should be dismissed. The remaining two claims focus on Idaho statutory requirements relevant to independent vice-presidential candidates. Specifically, Claim 3 alleges that Idaho Code § 34-708A violates the Equal Protection Clause of the Fourteenth Amendment by requiring independent presidential candidates to name a vice-presidential candidate before (1) political-party presidential candidates are required to do so *and* before (2) independent candidates may circulate petitions to collect signatures to secure access the Idaho's 2024 general election ballot. Claim 4 alleges that, for the same reasons, the challenged statute (again, Idaho

Code § 34-708A) burdens the exercise of "core political speech protected under the First and Fourteenth Amendments." *Compl.*, Dkt. 1, ¶ 75.

At the time the lawsuit was filed, independent presidential candidates were required to file their declaration for candidacy by March 15, 2024, and the declaration had to include the name of a vice presidential candidate. By contrast, political-party candidates have until September 1 to certify their presidential and vice-presidential candidates. *Compare* Idaho Code § 34-708A *with* Idaho Code § 34-711. A few weeks after the lawsuit was filed, however, the Idaho legislature amended Idaho Code § 34-708A, and extended that March 15 deadline to August 1. *See* Idaho Code § 34-708A(1).[1] Plus, as already noted above, the Idaho Secretary of State informed Team Kennedy that independent candidates have until September 3 in which to substitute their named vice presidential running mate. *See Ex. C to McQuade Dec.*, Dkt. 17-9.

Shortly after the amended statute went into effect, the Secretary of State moved to dismiss this lawsuit. He brings his motion under Federal Rule of Civil Procedure 12(b)(1), arguing that the Court lacks subject-matter jurisdiction over this action because Plaintiff lacks standing and because the claims are moot.

---

[1] The Secretary separately requested that the Court take judicial notice of the history of this legislation. *See* Dkt. 17-2, 17-3. The Court will grant that unopposed request.

## LEGAL STANDARD

### 1.  Rule 12(b)(1) Motions – General Rules

A party may challenge the Court's subject-matter jurisdiction by bringing a motion to dismiss under Federal Rule of Civil Procedure 12(b)(1). "A Rule 12(b)(1) jurisdictional attack may be facial or factual." *Safe Air For Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). "In a facial attack, the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction." *Id.* "By contrast, in a factual attack, the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction." *Id.* The Secretary brings a factual challenge.

In a factual challenge, the moving party "disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction." *Id.* "When the defendant raises a factual attack, the plaintiff must support her jurisdictional allegations with competent proof under the same evidentiary standard that governs in the summary judgment context." *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014) (citation and quotation marks omitted). The Court need not accept the allegations in the complaint as true. *Safe Air*, 373 F.3d at 1039. The plaintiff bears the burden of proving subject-matter jurisdiction by a preponderance of the evidence. *Leite*, 749 F.3d at 1121.

## 2. Standing

Standing is properly raised in a Rule 12(b)(1) motion to dismiss, and in the context of such a motion, plaintiff bears the burden of establishing Article III standing. *See Chandler v. State Farm Mut. Auto. Ins. Co.*, 598 F.3d 1115, 1122 (9th Cir. 2010). The requirements of Article III standing are that plaintiff "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992)). "The plaintiff, as the party invoking federal jurisdiction, bears the burden of establishing these elements" and, where a case is in the pleading stage, "the plaintiff must 'clearly … allege facts demonstrating each element.'" *Id.* (citation omitted).

## 3. Mootness

If a case becomes moot at any point during the life of the litigation, it is no longer an Article III "case" or "controversy," meaning that a federal court has "no business" deciding the dispute. *See Already, LLC v. Nike, Inc.*, 568 U.S. 85, 90 (2013). "A case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *City of Erie v. Pap's A.M.*, 529 U.S. 277, 287 (2000). That said, if an issue is "capable of repetition, yet

evading review," the litigation may "continue notwithstanding the named plaintiff's current lack of a personal stake." *United States Parole Comm'n v. Geraghty*, 445 U.S. 388, 398 (1980).

## ANALYSIS

### 1.    Injury-in-Fact

The Secretary says Team Kennedy has not suffered any cognizable injury because Mr. Kennedy mainly just wanted to know whether he could name a placeholder vice-presidential candidate in his petition for candidacy and later substitute the name of his actual vice-presidential running mate. *See Mtn. Mem.*, Dkt. 17-1, at 10-11. With that fact in mind, the Secretary says that because he "informed Plaintiff well before it filed the Complaint that Mr. Kennedy could substitute his vice presidential candidate at any time up to September 3, 2024," Plaintiff lacks standing to bring either Claim 3 or Claim 4. *See id.* at 10, 11, 15.

The Court is not persuaded. For starters, the factual record doesn't entirely bear out this argument. To be sure, at one point Team Kennedy did ask whether Mr. Kennedy could substitute the name of his vice presidential candidate. But Team Kennedy's initial series of questions to the Secretary's office included this threshold question: "Does the vice presidential candidate have to listed on the petition forms?" *See Ex. A to Cassidy Dec.*, Dkt. 17-6, at p. 3 of 6.

Moreover, putting the question-and-answer sessions aside, Team Kennedy's

complaint is not focused on the mechanism or deadline for substituting the name of a vice-presidential candidate. Rather, Team Kennedy alleges it suffered an injury because Mr. Kennedy couldn't begin the process of attempting to gather the requisite signatures unless and until he had named a vice-presidential running mate. These allegations are made throughout the complaint. For example, paragraph 4 alleges that "Idaho . . . requires independent presidential candidates (and only independent presidential candidates) to name their vice-presidential nominee as a condition precedent to being able to collect any petition signatures to demonstrate that the independent presidential candidate has sufficient support to warrant access to Idaho's 2024 general election ballot." *Comp.*, Dkt 1, ¶ 4. Later, Team Kennedy alleges how this requirement harmed him:

> The inability to collect petition signatures until a vice-presidential nominee is named by an independent presidential candidate severely shortens both the deliberative and political process afforded to political party presidential candidates to select their vice-presidential nominee with the care properly afforded to that office, all to the great detriment of independent presidential candidates.

*Id.* ¶ 32; *see also id.* ¶ 40. Plaintiff elaborates further in the briefing, explaining that "Idaho forces independent and third-party candidates to either rush their selection process and expose their vice-presidential candidates to extended scrutiny by their political opponents or to start their Idaho campaign with a big fat intentional lie to the voters of Idaho by inserting the name of a person who the presidential

candidate knows will not be his/her running mate on the nomination petitions in order to timely collect the requisite number of valid signatures just to secure access to Idaho's general election ballot." *Response,* Dkt. 22, at 5. Based on this theory, which is sufficiently alleged in the complaint, Team Kennedy has alleged an injury-in-fact, notwithstanding his ability to substitute a different vice-presidential candidate at a later time.

The Secretary's citation to the Northern District of Florida's decision in *Anderson v. Firestone*, 499 F. Supp. 1027 (N.D. Fla. 1980) does not change the analysis. In *Anderson,* the Florida Secretary of State required independent presidential candidate John Anderson to name his running mate on state petition forms—similar to the requirement Mr. Kennedy faced. Unlike here, however, Florida state election officials refused to allow Mr. Anderson to later substitute a different vice-presidential candidate. The court held that this refusal denied equal protection of the laws to Mr. Anderson and ordered the Florida Secretary of State to print the name of Mr. Anderson's actual running mate on the general election ballot. *Id.* at 1030-31.

The Secretary reads *Anderson* as having established the constitutionality of forcing independent presidential candidates to name their vice-presidential running mates on their petition forms at the outset—so long as they can later substitute in a

different name. *See Mtn. Mem.*, Dkt. 17-1, at 15. But *Anderson*—which isn't binding anyway—didn't address or resolve that issue. Rather, the court was confronted with a factual situation where Mr. Anderson had already named a surrogate vice-presidential candidate on his petition form. Then, after the surrogate candidate announced his withdrawal, Anderson requested that his actual running mate be placed on the ballot to fill the vacancy. As noted, the Florida Secretary of State refused the request. The specific issue before the *Anderson* Court, then, was whether the plaintiffs were denied equal protection of the law by virtue of the State's failure to provide the same or similar mechanism afforded to party candidates for filling a vacancy. *See id.* at 1029. What wasn't before the court was whether it's an equal-protection violation to require independent-party vice-presidential candidates to be named on the petition form in the first place.[2] For this reason, the Court does not agree with the Secretary's assertion that requiring independent presidential candidates to name their running mates early—along with

_____

[2] To the extent *Anderson* touched on this issue, it hinted that there is no reason for requiring independent presidential candidates to name a vice-presidential candidate in their petition forms. It observed that the Florida Secretary of State had "chosen to interpret … [the relevant Florida statute] as requiring a specific name for vice-president to be supplied on the form" but that the "*statute could as easily be construed to permit a designation of 'whomsoever (the presidential candidate) may select'* . . . ." 499 F. Supp. at 1030 (emphasis added). In other words, why require independent presidential candidates to name anyone? Why can't they simply say something like "whomsoever the presidential candidate may later select"?

**MEMORANDUM DECISION AND ORDER - 9**

the opportunity to later sub in a new running mate—"is the process *required* by the federal court in *Anderson*." *Mtn. Mem.,* Dkt. 17-1, at 15. Accordingly, the Court will deny the motion to dismiss Claims 3 and 4 based on the alleged lack of standing.

## 2.    Mootness

The Court also finds that Team Kennedy has met its burden of demonstrating that this action is not moot, despite the fact that he named his vice-presidential running mate after having sued and despite the new August 1 deadline. Even with the new, August 1 deadline in place, independent presidential candidates are still required to name their running mate a full month before political-party candidates. And that August 1 deadline is, of course, statutorily prescribed. *See* Idaho Code § 34-708A (setting out the requirements related to declarations of candidacy for independent presidential candidates, including the August 1 deadline, and further stating that "[t]he candidates for president and vice president shall be considered as candidates for one (1) office . . . ."). This is the sort of evidence presented in most election law cases falling under the "capable of repetition, yet evading review" exception to mootness. *Cf. Libertarian Party v. Dardenne*, 595 F.3d 215, 218 n.6 (5th Cir. 2010) (concluding that "capable of repetition" exception did not apply because the Secretary's actions did not involve governmental action done pursuant to an election statute). The reason such

challenges survive is that courts generally assume (as this one will) that the government will continue to enforce the relevant statute in the future. *See, e.g., FEC v. Wis. Right to Life, Inc.*, 551 U.S. 449, 463 (2007) (observing that "there is no reason to believe that the FEC will 'refrain from prosecuting violations' of BCRA."); *see also, e.g., Storer v. Brown,* 415 U.S. 724, 737 (1974); *Moore v. Ogilvie,* 394 U.S. 814, 816 (1969). Accordingly, the Court will deny the motion to dismiss to the extent it relies on a mootness argument.

**ORDER**

**IT IS ORDERED that**:

1.      Defendant's Motion to Dismiss (Dkt. 17) is **GRANTED in part** and **DENIED in part** as follows: The motion is granted as to Claims 1 and 2. Those claims are dismissed. The motion is denied as to Claims 3 and 4.

2.      Defendant's Request for Judicial Notice (Dkt. 17-2) is **GRANTED.**

DATED: September 4, 2024

B. Lynn Winmill
U.S. District Court Judge